## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | |
|---|---|
| PAULA J. FARLIN, | ) |
| Plaintiff, | ) |
| v. | ) Case No.   08-cv-1194 |
| THE LIBRARY STORE, INC., *an Illinois* *corporation*, | ) |
| Defendant. | ) |

### O R D E R  &  O P I N I O N

This matter is before the Court on Defendant's Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. 48).  For the reasons stated below, Defendant's Motion to Strike and Motion to Dismiss, filed on May 15, 2009 is denied as moot, Defendant's Motion to Dismiss, filed on August 6, 2009 is granted, and Plaintiff is granted twenty-one days from the date of this Order & Opinion to file a Fourth Amended Complaint that cures the pleading deficiencies of Count I and that omits the claims of Count II.

**BACKGROUND**

Plaintiff originally filed her *pro se* Complaint in this Court on August 8, 2008, charging The Library Store, Don Gunter, Stephen Gunter, Gregory Gunter, and Marilyn Gunter with discrimination in violation of Title VII.  (Doc. 1).  In September 2008, after Defendants had filed a Motion to Dismiss (Doc. 10), attorney Stephen Thomas entered his appearance on behalf of Plaintiff, and Plaintiff filed an Amended Complaint (Doc. 22).  Defendants' first Motion to Dismiss was thus found

to be moot. (9/30/08 Text Order). Defendants then filed a second Motion to Dismiss, on November 3, 2008 (Doc. 23), to which Plaintiff responded by requesting leave to file a Second Amended Complaint (Doc. 28). Magistrate Judge Gorman granted Plaintiff's Motion for Leave to File, and noted that the new complaint rendered the second Motion to Dismiss moot. (11/20/08 Text Orders). The Second Amended Complaint dropped the charges against Don Gunter, Stephen Gunter, Gregory Gunter, and Marilyn Gunter. (Doc. 33).

On May 15, 2009, Defendants filed a Motion to Strike and Motion to Dismiss. (Doc. 44). Again, rather than oppose the Motion to Strike and Motion to Dismiss, Plaintiff requested leave to file another amended complaint. (Doc. 46). On July 30, 2009, she filed her second "Second" Amended Complaint. (Doc. 47). The second Second Amended Complaint reinstated Defendants Don Gunter, Stephen L. Gunter, Gregory L. Gunter, and Marilyn Gunter, who had been dismissed from the action by the filing of the first Second Amended Complaint. (Doc. 33). On August 6, 2009, Defendants filed another Motion to Dismiss. (Doc. 48). On September 21, 2009, Plaintiff was granted leave by Magistrate Judge Gorman to file her Third Amended Complaint. (9/21/09 Text Order). Plaintiff sought leave to amend because she had inadvertently added the Gunters' names to the second Second Amended Complaint and because she had mistakenly labeled the second Second Amended Complaint as "Second," rather than "Third." (Doc. 51). Magistrate Judge Gorman noted that the Third Amended Complaint did not moot the last two Motions to Dismiss. (9/21/09

2

Text Order).  The Third Amended Complaint again drops the charges against the individual defendants, the Gunters.[1]  (Doc. 52).

## LEGAL STANDARD

"In ruling on Rule 12(b)(6) motions, the court must treat all well-pleaded allegations as true and draw all inferences in favor of the non-moving party." In re marchFIRST Inc., --- F.3d ----, 2009 WL 4894248, *3 (7th Cir. Dec. 21, 2009) (citing Tamayo v. Blagojevich, 526 F.3d 1074, 1081 (7th Cir.2008)).  To survive a motion to dismiss under 12(b)(6), a plaintiff's complaint must "plead some facts that suggest a right to relief that is beyond the 'speculative level.'"  EEOC v. Concentra Health Svcs., Inc., 496 F.3d 773, 776-77 (7th Cir. 2007) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 560-63 (2007)).  Though detailed factual allegations are not needed, a "formulaic recitation of a cause of action's elements will not do."  Twombly, 550 U.S. at 547.  "The complaint must contain 'enough facts to state a claim to relief that is plausible on its face' and also must state sufficient facts to raise a plaintiff's right to relief above the speculative level."  Bissessur v. Indiana University Bd. of Trustees, 581 F.3d 599, 602 (7th Cir. 2009) (quoting Twombly at 557; Tamayo, 526 F.3d at 1084).  "A claim has facial plausibility 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  Id. (quoting Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009)).

---

[1]  The Third Amended Complaint thus moots the first point of Defendant's August 6, 2009 Motion to Dismiss (Doc. 48), which argued that the individual defendants should be dismissed from the suit with prejudice.

**DISCUSSION**

**I.    May 15, 2009 Motion to Strike and Motion to Dismiss**

Ordinarily, under Local Rule 7.1(E), "Whenever an amended pleading is filed, any motion attacking the original pleading will be deemed moot unless specifically revived by the moving party within fourteen (14) days after the amended pleading is served."  Therefore, Defendant's May 15, 2009 Motion to Strike and Motion to Dismiss (Doc. 44) would typically be moot under the Local Rule, as it was followed by an amended complaint (Doc. 47).  However, in granting Plaintiff's Motion for Leave to File her Third Amended Complaint, Magistrate Judge Gorman specifically noted that the filing of the Third Amended Complaint "does NOT moot the pending motions to dismiss (#44 and 48)."  (9/21/09 Text Order).

Though the May 15 Motion was not rendered moot by operation of the Local Rule, it is now moot.  Plaintiff responded to the May 15 Motion to Strike and Motion to Dismiss by noting that she did not intend to oppose it, but that she sought leave to amend her complaint.  (Doc. 46).  Defendant did not oppose Plaintiff's request.  On July 30, 2009, Plaintiff filed her second "Second" Amended Complaint.  (Doc. 47).  As Plaintiff did not oppose the May 15 Motion to Strike and Motion to Dismiss against first Second Amended Complaint, the Motion would likely have been granted.  On August 6, 2009, though, before the Court had ruled on the May 15 Motion, Defendant filed another Motion to Dismiss, directed toward the second Second Amended Complaint.  (Doc. 48).

The May 15 Motion to Strike and Motion to Dismiss argued (1) that Plaintiff's request for compensatory and punitive damages under the second count,

which alleges retaliation in violation of the Americans with Disabilities Act ("ADA"), must be dismissed, and (2) that her request for a jury trial on the second count must be stricken. Plaintiff's Third Amended Complaint omits the request for compensatory and punitive damages from Count II, and the May 15 Motion is thus moot insofar as it requests the dismissal of Plaintiff's request for compensatory and punitive damages from Count II. (Doc. 45). Further, in its August 6 Motion to Dismiss, Defendant argues, *inter alia*, that Plaintiff's request for a jury trial as to the ADA retaliation count must be stricken; Defendant's second argument in its May 15 Motion is thus moot, as it is duplicated in the August 6 Motion to Dismiss. (Doc. 48). Therefore, the May 15 Motion to Strike and Motion to Dismiss (Doc. 44) is denied as moot.

## II.     Count I: Title VII Sex Discrimination

Plaintiff claims that Defendant discriminated against her on the basis of her sex when it hired a male for a warehouse job she had applied for, though she was qualified for the position and had been in Defendant's employ for six years, while the male was new to the company.[2] Title VII discrimination plaintiffs can use either a direct or an indirect method of proof in order to state their prima facie case. Winsley v. Cook County, 563 F.3d 598, 604 (7th Cir. 2009). Defendant argues that Plaintiff fails to state a claim for Title VII sex discrimination under both the direct method and the indirect method of proof. As Plaintiff's Response argues only that

---

[2]     Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, et seq., makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's…sex."

the claim survives the Motion to Dismiss under the indirect method of proof, the Court will consider her allegations under that analysis.

Under the indirect method of proof, a plaintiff "must establish a prima facie case of discrimination by presenting evidence that: (1) she is a member of a protected class, (2) her job performance was meeting her employer's legitimate expectations, (3) she was subject to a materially adverse employment action, and (4) the employer treated similarly situated employees outside the protected class more favorably."  Id.  Defendant argues that Plaintiff has failed to properly allege the fourth element, the existence of a similarly situated male who was treated better than Plaintiff by Defendant.  In her Response, Plaintiff merely restates the allegations of the Third Amended Complaint, and claims that "[t]hese allegations, which must be taken as true for purposes of a motion to dismiss, state a claim for gender-based discrimination under Title VII.  These allegations are of sufficient detail to give defendant fair notice of what the claims are and the grounds upon which they rest." (Doc. 53 at 3).

The Court finds that Plaintiff has not properly alleged that she was "similarly situated" to the male hired for the warehouse position that she sought.  In Tamayo, the Seventh Circuit held that a Title VII plaintiff had sufficiently alleged her claim of sex discrimination under the indirect method of proof by alleging facts as to her own salary as Administrator of the Board, the salaries of previous males who had held the same job, and by specifically alleging that the defendants treated her differently from "similarly situated male employees."  526 F.3d at 1085.

In this case, Plaintiff merely alleges that a male who had never previously worked for Defendant was hired to fill a position that she also sought, though she had worked for Defendant for six years. Though Plaintiff alleges that she was qualified for the warehouse position, she does not allege that the male was "similarly situated" to her. The Tamayo plaintiff explicitly alleged that she was "similarly situated" to the male comparators, and indeed, she held the same position as they did, which makes it plausible that they were similarly situated. Here, the allegation of similarity is missing, as are any facts that could lead to a plausible inference that the two were similarly situated. Therefore, Defendant's Motion to Dismiss is granted as to Count I of the Third Amended Complaint. However, as will be discussed below, Plaintiff has sought leave to amend her complaint, which will be granted as to this claim.

### III.  Count II: ADA Retaliation

Plaintiff alleges that Defendant retaliated against her in violation of the ADA for her friendship with Cynthia Springer, who Plaintiff believed was discriminated against by Defendant because she had cancer.³ Defendant argues that Plaintiff's

---

³  The ADA provides that "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 122203(a). The Court does not state any opinion as to whether Plaintiff's allegations would be sufficient to state a claim under this provision.

Further, the ADA states that that "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112. "Discriminate," as used in the statute, includes "excluding or otherwise denying equal jobs or benefits to a qualified individual

allegation of ADA retaliation fails to state a claim upon which relief can be granted, as Plaintiff did not raise this claim before the EEOC. Under Title VII, a plaintiff must file a charge with the EEOC, and the Commissioner must issue a right to sue letter before the plaintiff can bring her suit to court. Rush v. McDonald's Corp., 966 F.2d 1104, 1110 (7th Cir. 1992). Plaintiff has complied with these requirements. "In addition, however, the scope of the subsequent judicial proceedings is limited by the nature of the charges filed with the EEOC….This limitation…gives the employer some warning of the conduct about which the employee is aggrieved, and it affords the agency and the employer an opportunity to attempt conciliation without resort to the courts." Id.

> Plaintiff's Charge of Discrimination with the EEOC alleges that:
>
> I was hired by Respondent on August 1, 2001. In or around July 2007, I applied for a lateral position. In or around August 1, 2007, I learned I was not selected. On January 25, 2008, I was constructively discharged.
> I believe I have been discriminated against based on my sex, female, in violation of Title VII of the Civil Rights Act of 1964, as amended. I also believe I have been retaliated against, in violation of Title VII of the Civil Rights Act of 1964, as amended.

(Doc. 49, Ex. A; Doc. 53, Ex. A). On the Charge form, Plaintiff checked the boxes for discrimination based on "sex" and "retaliation." (Doc. 49, Ex. A; Doc. 53, Ex. A). The word "disability" does not appear anywhere on the Charge, nor is the "disability" discrimination box checked; she does not even mention that her contact with another employee was at issue. Plaintiff has not submitted any allegations

---

because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." 42 U.S.C. § 12112(b)(4). However, Plaintiff does not rely on this portion of the statute, nor could she, as this type of claim is not mentioned in the EEOC Charge and is not reasonably related to the allegations of the Charge.

8

outside the Charge itself to support her argument that the Charge included ADA retaliation. Cheek v. Western and Southern Life Ins. Co., 31 F.3d 497, 502 (7th Cir. 1994) (affidavits attached to charge can be considered, and amendments to EEOC charge can "clarify or amplify" the Charge).

The Court finds that Plaintiff's Charge did not raise the issue of ADA retaliation before the EEOC. Though the standard for interpreting whether an EEOC charge presented a type of discrimination is liberal, "the requirement of some specificity in a charge is not a 'mere technicality.'" Rush, 966 F.2d at 1111. This is so even where the plaintiff filling out the EEOC charge is not assisted by an attorney. Cheek v. Western and Southern Life Ins. Co., 31 F.3d at 500. The Seventh Circuit has noted that "[a]ll claims of discrimination are cognizable that are 'like or reasonably related to the allegations of the charge and growing out of such allegations.'" Rush, 966 F.2d at 1111 (quoting Babrocky v. Jewel Food Co., 773 F.2d 857, 864 (7th Cir. 1985) (internal citations omitted)); Cheek v. Peabody Coal Co., 97 F.3d 200, 202 (7th Cir. 1996) (plaintiff may pursue allegations not explicitly included in EEOC charge if allegations "fall within the scope of the charges contained in the EEOC complaint").

In Rush, the plaintiff's EEOC charge had stated her belief that she had "been discriminated against because of [her] race, Black," that she believed white employees were promoted more quickly than were black employees, and that she had been terminated by her employer as a result of discrimination. Though this was sufficient to support the plaintiff's charges of racial discharge and denial of promotion, as well as the claims that she had been denied benefits and that the

9

employer had a policy of discriminatory promotion, which were both derivative of the denial of promotion, they had not preserved the plaintiff's racial harassment claims. Rush, 966 F.2d at 1111. The court held that some further detail was necessary in order "to allow the agency to perform its statutory duty." Id.

Likewise, here Plaintiff's EEOC Charge was insufficient to allow the EEOC to perform its statutory duty of investigating Plaintiff's alleged ADA retaliation, as there is absolutely no indication in the Charge that Plaintiff was retaliated against because of her association with an allegedly disabled coworker. The Charge raises no form of discrimination or retaliation other than that based on sex. The Charge is specific as to the sex discrimination alleged -- it mentions "sex" by name, and identifies two potential adverse employment actions. Though one of these the alleged constructive discharge that supports Plaintiff's instant ADA retaliation claim, as noted above, there is nothing to indicate that Plaintiff informed the EEOC that she believed the constructive discharge was a result of ADA retaliation, rather than sex discrimination and/or retaliation.

The ADA retaliation claim is not "like or reasonably related to the allegations of the charge and growing out of such allegations" such that it is now cognizable in this Court. Rush, 966 F.2d at 1111. Retaliation resulting in constructive discharge because of Plaintiff's friendship with Cynthia Springer is not "reasonably related" to Plaintiff's claim that she was passed over for the warehouse position because of her sex, nor would it "grow out" of that charge. These are completely separate actions, with different and distinct motivations. Cf. Macchia v. Loyola University Medical Center, 04-c-5049, 2004 WL 2392201, *4-5 (N.D. Ill. Oct. 25, 2004) (disability

10

retaliation claim was reasonably related to and grew out of EEOC charge complaining of disability discrimination).

Plaintiff makes three arguments in response to Defendant's Motion to Dismiss this count: (1) the "EEOC Charge states explicitly that plaintiff is making a charge of retaliation pursuant to Title VII," (2) Plaintiff's original *pro se* complaint in this Court clearly states her claim of ADA retaliation, and (3) Plaintiff's "original EEOC Charge was taken over the phone," and was not directly prepared by her. (Doc. 53 at 4). None of these are helpful to Plaintiff. First, as discussed above, though the charge mentions retaliation, it does not indicate retaliation in connection with disability; instead, it implies that the retaliation was in regard to Plaintiff's alleged sex discrimination. Title VII is not the ADA,[4] and more specificity is required to inform the EEOC of the nature of Plaintiff's claim. See Rush, 966 F.2d at 1111 (plaintiff's charge of "racial discrimination" included failure to promote and wrongful termination, but did not include racial harassment claim). Second, Plaintiff's *pro se* complaint is irrelevant to the issue of what charges were presented to the EEOC, as it was filed in this Court, not with the EEOC. Finally, the fact that Plaintiff's Charge was prepared by EEOC officers after a telephone interview with her does not work in Plaintiff's favor. In fact, it works against her, as it negates the argument that a layperson would not understand the need to

---

[4] Not only do the retaliation provisions of each statute protect only against retaliation for opposition to unlawful provisions of the specific statute, each statute protects against discrimination on the basis of different characteristics and thus their retaliation provisions protect only those who oppose discrimination on the basis of those characteristics -- Title VII protects against discrimination on the basis of "race, color, religion, sex, or national origin," while the ADA protects qualified individuals from discrimination "basis of disability."

11

specifically label the type of discrimination or retaliation she had suffered. If Plaintiff had informed the EEOC officer that she believed her friendship with Cynthia Springer was the cause of retaliation by Defendant, the EEOC officer would surely have recorded the fact that Plaintiff was alleging ADA retaliation, as he or she would have been aware of the different types of discrimination and retaliation. For the foregoing reasons, Defendant's Motion to Dismiss is granted as to Count II of Plaintiff's Third Amended Complaint.

Defendant argues that Plaintiff's request for a jury trial under Count II must be stricken, as she seeks only equitable remedies; Plaintiff did not argue for a jury trial as to Count II in her Response. As the entirety of Count II is hereby dismissed, this request is moot.

### IV. Leave to Amend Complaint

In her Response to Defendant's Motion to Dismiss, Plaintiff requests that, if Defendant's Motion to Dismiss is granted, she be granted leave to file another amended complaint. Under Federal Rule of Civil Procedure 15(a)(2), amendments are to be allowed "freely…when justice so requires." The Supreme Court has set out this standard:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.— the leave sought should, as the rules require, be "freely given."

Foman v. Davis, 371 U.S. 178, 182 (1962). However, a "district court does not abuse its discretion when it denies leave to amend where repleading would be futile."

Arazie v. Mullane, 2 F.3d 1456, 1464 (7th Cir. 1993) (citing DeSalle v. Wright, 969 F.2d 273, 277 (7th Cir.1992)).

Here, Plaintiff is granted leave to amend Count I of her complaint, which alleges sex discrimination in violation of Title VII. There is no indication that allowing Plaintiff leave to amend this Count will cause prejudice to Defendant, as a new claim will not thereby by added and the case's progress should not be unduly delayed. In addition, there is no evidence of bad faith. The amendment would merely be to cure the pleading defects discussed above, if it is possible for Plaintiff to do so. These pleading deficiencies were identified in one of Defendant's previous motions to dismiss (Doc. 10), which was directed toward Plaintiff's original *pro se* complaint; however, since Plaintiff's attorney entered his appearance, Defendant has not until now identified this particular pleading problem of Plaintiff's Count I. The Court will allow Plaintiff an amendment directed specifically toward these deficiencies.

On the other hand, Plaintiff will not be allowed to amend her complaint to cure the defects of Count II, which alleges retaliation in violation of the ADA, as such amendment would be futile. As discussed above, Plaintiff's EEOC charge did not allege retaliation for her association with an allegedly disabled coworker. No amendment to the complaint could change this fact, and so any attempt to amend this claim would be futile.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Strike and Motion to Dismiss, filed on May 15, 2009 (Doc. 44) is DENIED AS MOOT. Defendant's

Motion to Dismiss, filed on August 6, 2009 (Doc. 48) is GRANTED. Plaintiff is GRANTED twenty-one days from the date of this Order & Opinion to file an Amended Complaint that cures the pleading deficiencies of Count I, identified in this Order & Opinion, and that omits the claims of Count II.

IT IS SO ORDERED.


Entered this <u>25th</u> day of January, 2010.


                                        s/ Joe B. McDade
                                        JOE BILLY McDADE
                                    United States District Judge